

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6992 | **DATE** | 2/25/2003 |
| **CASE TITLE** | PORTER vs. ROHAN et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order, defendants' motions for summary judgment are granted. This action is dismissed in its entirety. Any pending motions are moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 2 5 2003 | |
| ✓ | Notified counsel by telephone. | | date docketed | 72 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JS | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

|  |  |  |
|---|---|---|
| Irene Porter, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 6992 |
| | ) | |
| Michael J. Rohan, Director of Probation | ) | |
| and Court Services for the Circuit Court of | ) | |
| Cook County, in his official capacity, Local | ) | **DOCKETED** |
| 3477 of American Federation of State, County, | ) | FEB 2 5 2003 |
| and Municipal Employees, and the Office of | ) | |
| Chief Judge of the Circuit Court of Cook County, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 8, 2002, plaintiff Irene Porter ("Porter") filed an eight-count First Amended Complaint against defendants Michael J. Rohan, Director of Probation and Court Services for the Circuit Court of Cook County ("Rohan"), in his official capacity, the Office of Chief Judge of the Circuit Court of Cook County ("Chief Judge"), and Local 3477 of American Federation of State, County, and Municipal Employees ("Union"). On May 7, 2002, this court dismissed Counts III, IV, V, VI, and VII of the First Amended Complaint. As to the remaining counts, Count I, directed at Chief Judge, alleges violations of Title VII, 42 U.S.C. §§ 2000e–2000e-15; Count II against Rohan alleges violations of 42 U.S.C. § 1981; Count VIII against Union alleges that Union violated Title VII through its breach of its duty of fair representation. On January 3, 2003, defendants moved,

1



pursuant to Federal Rule of Civil Procedure 56, for summary judgment. Having considered this matter fully, for the reasons stated herein, defendants' motions for summary judgment are granted.

## STATEMENT OF FACTS

I. <u>Local Rules of the Northern District of Illinois</u>

    A.    <u>Local Rule 56.1</u>

To assist the court in identifying the relevant facts of a case and the evidence establishing these facts, and more importantly whether any material facts are in dispute, Local Rule 56.1 requires the parties to file certain statements of fact at the summary judgment stage. Pursuant to Local Rule 56.1(a)(3), the moving party must submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law . . . ." This statement must consist of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Rule 56.1(a)(3).

In the case at hand, defendants have complied with Local Rule 56.1(a). As a result, plaintiff, in opposition to defendants' motions for summary judgment, must file a "response to each numbered paragraph in the moving party's [56.1(a)(3)] statement, including, in the case of any disagreement, *specific references to the affidavits, parts of the record, and other supporting materials relied upon* . . . ." Rule 56.1(b)(3)(A) (emphasis added). The Rules also make clear that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Rule 56.1(b)(3)(B).

Here, as to Rohan and Chief Judge, plaintiff filed a "Reply to Defendant's [sic] Statement of Material Acts [sic]." Although labeled a "Reply," this court assumes that plaintiff's counsel, Mr.

Emmett J. Marshall, III, was attempting in this filing to comply with Rule 56.1(b)(3). His efforts were woefully inadequate.

First, in many of the paragraphs, plaintiff's counsel claims there is a dispute of fact but fails to cite to the record in any manner whatsoever. (See ¶¶ 5, 17,[1] 22, 24, 25, 26, 27, 28, 31, 33, 34, 37, 38, 40, 41, 44, 51, 54, 58, 59, 60, 62, 63, 65, 66, 67, 68, 71, 73.) As stated above, bald statements disputing movants' facts are not permitted. The nonmovant must specifically cite to "affidavits, parts of the record, and other supporting materials relied upon . . . ." Rule 56.1(b)(3)(A). Because, in many of the paragraphs, plaintiff's counsel has not raised properly, in accordance with the Local Rules, a dispute of fact, such statements of fact by Rohan and Chief Judge listed above are deemed admitted.[2] Rule 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

Second, in response to paragraph 6, plaintiff's counsel attempts to create a dispute of fact by citing to plaintiff's First Amended Complaint. Federal Rule of Civil Procedure 56(e) makes clear, however, that a party opposing summary judgment "may not rest upon the mere allegations or denials of [that party's] pleading . . . ." FED. R. CIV. P. 56(e). See also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves* . .

---

[1] Plaintiff cites to the same pages of the Golden deposition as Rohan and Chief Judge for the proposition that Jennifer Nunez supervised five trainees and plaintiff supervised four. This is precisely what Rohan and Chief Judge state. Thus, because plaintiff has failed to controvert this fact, paragraph 17 is deemed admitted. Of course, plaintiff's responses in this paragraph unsupported by the record also fail to create disputed facts.

[2] Plaintiff does not dispute, and thus admits, the following statements of fact by Rohan and Chief Judge: ¶¶ 1, 2, 3, 4, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, 23, 29, 30, 32, 39, 42, 43, 45, 46, 47, 48, 49, 50, 52, 53, 55, 56, 57, 61, 64, 69, 70, 72, 74, 75.

. . ." (emphasis added)).    Because plaintiff's counsel has cited simply to plaintiff's complaint for

support, a dispute of fact has not been created, and thus defendant Rohan and Chief Judge's

statement of fact paragraph 6 is deemed admitted.

Third, plaintiff's counsel has cited to several exhibits which were not attached to plaintiff's

"Reply." (See ¶¶ 7, 18, 21, 33, 34, 35.)  On February 10, 2003, eight business days after plaintiff's

56.1(b) response, with supporting materials, was due, at approximately 10:00 a.m., this court's

courtroom deputy telephoned plaintiff's counsel and left a message on his answering machine

informing him that if he wanted this court to consider the above-referenced exhibits he would have

to file such exhibits by 2:00 p.m. that day. On February 12, 2003, plaintiff's counsel filed a "Motion

to Amend Plaintiff's Reply to Defendant's [sic] Statement of Material Facts."  This court will

consider only exhibits A and B attached to the February 12th filing.[3]

_____

[3] This court is shocked at plaintiff's counsel's brazen attempts to amend his "Reply."
Plaintiff's counsel, on February 12, 2003, did not simply submit his previously unattached
exhibits, as this court had requested on February 10, 2003, but attempted to amend his previously
filed substantive responses.
On February 11, 2003, defendants timely filed their replies, in which they pointed out the
glaring deficiencies in plaintiff's "Reply." (See Union's Reply Mem. at 1 n.1; Union's Reply to
Pl.'s Stmt. of Mat. Facts at 1 n.1; Rohan & Chief Judge's Reply Br. at 1-2; Rohan & Chief
Judge's Reply in Support of Its Stmt. of Mat. Facts at 1-2.) Plaintiff's counsel, apparently
understanding for the first time the errors of his ways, attempted, the day after receiving copies of
defendants' replies, to amend his "Reply" with citations to the record. Plaintiff's counsel does
not get a unilateral "do-over." He cannot be allowed to submit a "Reply" grossly failing to meet
even the minimum levels of competency, have opposing counsel explain to him his
shortcomings, and then have the opportunity to correct them. There need be no further
discussion as to the inequities and unjustness of allowing plaintiff's counsel to engage in such
conduct. Thus, plaintiff's motion to amend is granted only to the extent that exhibits cited to in
the original "Reply" filed on January 29, 2003, are included. In all other respects, plaintiff's
motion is denied, and plaintiff's February 12th filing will be disregarded.
To confuse matters even more, the exhibits referred to in the original "Reply" are not
labeled consistently in the February 12th filing. The exhibits referred to in plaintiff's response to
paragraph 7 are not attached, and therefore paragraph 7 is deemed admitted. Exhibit D, job
description, and exhibit E, conference/seminar attendance request form, referenced in plaintiff's

Fourth, plaintiff's response to paragraph 36 states: "Not disputed that during 2000 training class plaintiff." As such statement is incomplete, paragraph 36 is deemed admitted.

Therefore, as to Rohan and Chief's Judge's 56.1(a) statements of fact, paragraphs 18, 21, 35, in full or part, are the only paragraphs either not admitted by plaintiff or deemed admitted by plaintiff's counsel's gross failure to comply with Local Rule 56.1.

With regard to Union, plaintiff's counsel has failed to cite to any record in attempting to dispute Union's statement of facts. "Plaintiff's Answer to AFSCME Local 3477's Statement of Material Facts" contains merely general admissions and denials. A general denial is insufficient to rebut a movant's factual allegations. Therefore, each of Union's statements of fact is deemed admitted. See Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 689 (7th Cir. 2000); McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998); Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997).

---

response to paragraph 18 are now attached as exhibits A and B, respectively. Plaintiff's counsel has not attached Exhibit F, a February 1, 1999, letter cited in plaintiff's response to paragraph 21. Further, exhibit F, cited in the same responsive paragraph, this time as "Conference/seminar attendance request form" as opposed to a "letter dated February 1, 1999," is now exhibit B. As "plaintiff's letter to Rohan," dated November 23, 1999, is not attached, paragraph 33 is deemed admitted. In paragraph 34 of the original "Reply" and the February 12th filing, plaintiff's counsel cites to exhibits G and H; neither is attached, and thus paragraph 34 is admitted. Exhibit D referred to in plaintiff's "Reply" paragraph 35 is now exhibit A. As best this court can discern, the only exhibits attached to the February 12th filing properly cited to in the original "Reply" are exhibits A and B. Accordingly, this court will not consider exhibits C, E, F, and I attached to the February 12th filing.

Finally, exhibit C, plaintiff's affidavit, deserves special mention. First, it appears that plaintiff's original "Reply" does not even cite to the affidavit. The affidavit simply was filed as part of the record. This court will not consider any part of the record not referenced in plaintiff's 56.1(b) response. Even more incredible, plaintiff's counsel, in his February 12th filing, cites to plaintiff's affidavit for propositions clearly not stated in the affidavit. (See e.g., ¶ 38 (Plaintiff's counsel states that "[p]laintiff always informed her secretary as to her whereabouts." Such a statement is nowhere to be found in plaintiff's affidavit.) This paragraph is just one small example of plaintiff's counsel's attempts to mislead this court.

5

Finally, pursuant to Local Rule 56.1(b)(3)(B), the party opposing summary judgment may file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Rule 56.1(b)(3)(B). In the case at hand, plaintiff's counsel has filed "Plaintiff's Answer to Defendant's Motion for Summary Judgment." Although Rule 56.1 does not reference such a document, this court interprets plaintiff's "Answer" to be a supporting memorandum of law, as required under Rule 56.1(b)(2). Plaintiff's "Answer" contains "facts" and "argument" sections. As Judge Castillo has pointed out, these are the two sections of a supporting memorandum of law. See Malec v. Sanford, 191 F.R.D. 581, 585-86 (N.D. Ill. 2000). A supporting memorandum should discuss the underlying facts; however, "[c]itations in the fact section should be to the 56.1(a) or (b) statement of facts only . . . ." Id. at 586. Here, plaintiff's counsel's "Overview of Significant Facts" contains citations directly to the record, not a 56.1(b) statement. Plaintiff's counsel cannot cite to such a statement of additional facts because plaintiff's counsel has failed to submit a 56.1(b)(3)(B) statement of additional facts. Further, the 56.1(b)(3)(B) statement of additional facts is the *only* acceptable means to submit additional facts for this court to consider. See Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1317 (7th Cir. 1995); Malec, 191 F.R.D. at 584. It is not appropriate for plaintiff's counsel to present additional facts in a supporting memorandum of law. See McGuire, 152 F.3d at 675. Therefore, because plaintiff's "Overview of Significant Facts" is not presented in accordance with the Local Rules, this court will not consider such facts.[4]

---

[4] Even if this court considered plaintiff's "Answer" a statement of additional facts, it contains several deficiencies. First, the paragraphs are not numbered. See Rule 56.1(b)(3)(B) (requiring a statement of additional facts to consist of "short *numbered* paragraphs . . . .") (emphasis added). Second, plaintiff's counsel fails to cite to any record in several paragraphs. (See e.g., Pl.'s "Answer" at 7 or 5.) See Rule 56.1(b)(3)(B) (stating that the statement of

B.    Local Rule 7.1

Plaintiff's memoranda fail to comply with Local Rule 7.1, which prohibits a memorandum from exceeding fifteen pages without leave of court. Plaintiff has not sought leave of court to exceed the fifteen-page limit. As both of plaintiff's memoranda exceed fifteen pages, this court, in its discretion, may refuse to consider any material beyond the fifteen-page limit. Rule 7.1. Because this court will not consider plaintiff's "Overview of Significant Facts," it will entertain the entirety of plaintiff's arguments, which are well within the fifteen-page limit.

Now, after explaining how this court has considered the undisputed facts, this court will set them forth below.

II.    Rohan and Chief Judge

Plaintiff, an African-American, was, and is still, employed by the Office of the Chief Judge of the Circuit Court of Cook County. In 1999, plaintiff held the position of probation officer and worked in the training division as a training supervisor. Plaintiff served in this capacity until she transferred to the East Division as a supervisor in April 2001. She currently holds this position.

As training supervisor, plaintiff reported to, and was supervised by, Rose Golden ("Golden"). During plaintiff's time as training supervisor, Jennifer Nunez ("Nunez"), a Caucasian, also was

---

additional facts must "includ[e] references to the affidavits, parts of the record, and other supporting materials relied upon."). Third, as may be discerned from the previous citation to plaintiff's "Answer," this court has two identically titled "Answers" before it. One "Answer" is 18 pages, and this court found it independently on the Racer docket system. This court never received a "judge's copy" of this document. The other "Answer" has 22 enumerated pages—page 22 of which is blank—and is not listed on the Racer system nor on the official court docket. The clerk of the court is directed to file this 22-page "Answer" in the record. It appears, based on the arguments presented, that the shorter "Answer" is directed towards Union and the longer towards Rohan and Chief Judge. This court will disregard the facts sections of each and consider the argument sections as to the appropriate defendant only.

employed as a training supervisor. Training duties were divided between plaintiff and Nunez. As training supervisors, plaintiff and Nunez were responsible for, *inter alia*, pre-service and in-service training of new officers. Golden was responsible for educating both plaintiff and Nunez as to their training responsibilities. To prepare plaintiff for her first training session, Golden provided plaintiff material from the training manual and explained how the material had been presented in the past. In addition, all supervisors are trained on how to fill out performance evaluations. As part of Nunez's training, she attended an off-site "manager's basic training" seminar in March 1999 with Golden. Plaintiff did not attend this seminar.

Plaintiff's performance as a training supervisor was substandard. During her first presentation, plaintiff read from the material and gave incorrect information. Plaintiff was unprepared for a presentation to the mentoring unit. In another presentation, she did not follow an outline she was given. Plaintiff made numerous errors in processing training requests, causing the requests to be returned to Chief Judge. Further, Golden asked plaintiff to attend a school career day; plaintiff failed to do so. In 1999, plaintiff received a verbal reprimand from Rohan for impugning the character of a co-worker. Plaintiff gossiped to her colleagues that a co-worker was engaged in prostitution. She gave one member of a training class time to change his incorrect answers to a quiz, while not affording the other class members a similar opportunity. She took a group of trainees on an unauthorized visit to a union member.[5] Plaintiff allowed one trainee extra time to study for an examination during class time. Frequently, plaintiff made negative and disparaging comments about her co-workers. Often, Golden could not locate plaintiff during work hours. Finally, plaintiff

---

[5] Plaintiff disputes that such visit was "unauthorized." Even accepting plaintiff's position as true, such a dispute of fact is not material to the issues of this case.

expressed to Golden that she felt processing training requests and setting up the training room were "menial" tasks.

Golden evaluated plaintiff's performance in 1999 and 2000. In 1999, plaintiff received a "meets standard" grade, and in 2000 she received a "below standard" evaluation. Golden evaluated Nunez as "meets standard" on her first evaluation and "exceeds standard" on her second evaluation.

As a training supervisor, plaintiff gave input into the evaluation of trainee Darryl McCurty ("McCurty"). Plaintiff stated on McCurty's evaluation that "Darryl evidenced leadership skills. He also appears to be loyal and committed to persons who have aided him to become the impressive young man that we hired. Darryl is cautioned to be aware when to defer to someone with more experience in situations that would not require his leadership abilities." Plaintiff indicated to Golden that plaintiff's comments on McCurty's evaluation referred to statements McCurty made to other individuals in the class that plaintiff was being treated unfairly. McCurty indicated to Golden that the conversation never took place. Charles Young ("Young"), Director of Administrative Services for Juvenile Probation Court Services, met with plaintiff, summarized the meeting in a memorandum, and issued a notice of pre-disciplinary meeting. After several continuances, plaintiff was suspended for three days—December 18, 19, and 20, 2000—for a compilation of offenses, including impugning the character of a co-worker, administering a quiz inappropriately, and failing to follow department protocol, culminating with the McCurty evaluation. This three-day suspension caused plaintiff no loss of benefits or seniority.

In August 1999, plaintiff heard Anita Wright ("Wright"), an adjunct trainer, comment to Golden that Wright would like to assign an MSW, Master of Social Work, to clean her house. Plaintiff found this comment offensive in general. Sometime between June and December 2000,

9

Diane Walsh ("Walsh"), an attorney, commented to plaintiff that Golden refused to admit that there are cultural differences. Plaintiff believed that Walsh's comments referred to race. To plaintiff's knowledge, no one else made comments about her race.

At some point after plaintiff served the three-day suspension, Young, Rohan, and William Sifferman ("Sifferman"), Deputy Director of Juvenile Probation Court Services, encouraged plaintiff to seek a transfer out of the training department. Young emphasized to plaintiff that this recommendation was not a demand that plaintiff transfer. Plaintiff requested a transfer out of the training department on April 10, 2001. Her transfer to the East Division caused her no loss in title, salary, or benefits.

Plaintiff never complained to Golden or Young about race discrimination or racial bias. However, on December 6, 2000, plaintiff filed an EEOC charge alleging race discrimination, and on January 11, 2002, plaintiff filed another EEOC charge alleging race discrimination and retaliation. Defendants received notice of plaintiff's December 6, 2000, EEOC charge by fax from the EEOC on December 21, 2000. Rohan was not aware that plaintiff complained of racial harassment or discrimination until this date.

III.   Union

AFSCME Council 31 and Local 3477 and the Office of the Chief Judge are parties to a collective bargaining agreement ("CBA") covering employees in the Cook County Juvenile Probation Division, including plaintiff. The only grievances plaintiff contends Union failed to file on her behalf are a grievance challenging her 1999 evaluation and an amendment to her three-day suspension grievance to allege race discrimination.

Plaintiff discussed with Chandra Walls ("Walls"), Vice President/Chief Steward of AFSCME Local 3477, the possible filing of a grievance protesting an evaluation plaintiff received in 1999 from Golden, a member of AFSCME Local 3477's bargaining unit. Walls declined to file a grievance on plaintiff's behalf, informing plaintiff that there was no contractual basis to file a grievance. Nefertiti Smith ("Smith"), AFSCME Local 3477's staff representative responsible for representing employees in connection with grievances, notified plaintiff that no grievance could be filed because the evaluation did not adversely affect plaintiff's merit pay or result in the denial of a promotion or transfer. Smith informed plaintiff that Union does not file grievances against bargaining unit members; rather, if the actions of a bargaining unit member are alleged to be improper, a grievance may be filed against the employer for allowing a bargaining unit member to discriminate against another member. Plaintiff was a union steward from 1999 until February 2001 and was trained to know that she had a right to file a grievance on her own.

After plaintiff's three-day suspension, Walls filed a grievance on plaintiff's behalf protesting the suspension. In January 2001, plaintiff requested that Walls amend the three-day suspension grievance to allege that the suspension was due to race discrimination on the part of Chief Judge. Plaintiff did not explain to Walls how plaintiff's suspension was due to race discrimination; consequently, Walls did not file an amended grievance. Plaintiff, as a union steward and bargaining unit member, could have filed an amended grievance alleging race discrimination on her own.

During the third step of the grievance procedure regarding plaintiff's three-day suspension, plaintiff requested that Union obtain from Chief Judge, pursuant to the CBA, the names of the witnesses on whom Chief Judge was relying in support of its disciplinary decision. Chief Judge responded that the witnesses included bargaining unit employees and that management was fearful

11

of retaliatory behavior on plaintiff's part. Smith insisted that Union receive a witness list, and Chief Judge provided one. Because other employees had complained to Michael Willis ("Willis"), President of AFSCME Local 3477, and Walls that plaintiff had been intimidating them, Willis and Walls did not share the witness list with plaintiff. Smith and Walls interviewed four of the witnesses on the witness list. These witnesses provided information detrimental to plaintiff's case. As part of her investigation of plaintiff's grievance, Smith requested plaintiff provide Smith a rebuttal to all of Chief Judge's charges against her. In January 2001, based on her investigation, Smith recommended to plaintiff that she accept the three-day suspension. Plaintiff, with Union's assistance, however, pursued the grievance to the fourth step of the grievance procedure. Chief Judge denied plaintiff's grievance. In a letter dated April 5, 2001, Smith informed plaintiff that Union would not submit plaintiff's three-day suspension grievance to arbitration because plaintiff's grievance lacked merit.

Plaintiff asserts the real reason that Union did not submit her grievance to arbitration was based on her race. She claims that two white employees, Julie Ann Crawford ("Crawford") and William Garvey ("Garvey"), were treated better than her by Union. Crawford received a suspension for making an inappropriate statement about the Reverend Jesse Jackson; she was also required to perform community service for Operation PUSH. Union did not file a grievance on Crawford's behalf. Plaintiff does not know whether a grievance was filed by or on behalf of William Garvey.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

12

of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. See Celotex, 477 U.S. at 324. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. See id.

Although almost all of defendants' facts have been admitted or deemed admitted, this court cannot automatically grant defendants' motions for summary judgment. See Michas, 209 F.3d at 689. This court must still construe all undisputed facts in the light most favorable to plaintiff, the non-movant, and determine if defendants are entitled to judgment as a matter of law. See id.

## ANALYSIS

This court has worked diligently in attempting to discern plaintiff's counsel's confusing, disordered, convoluted, and incoherent arguments. For example, plaintiff's memorandum as to

Union contains the following sentence: "Plaintiff did engage in activities tending to engender the animosity of the union agents, she support union president Michael Wills [sic] opponent." (Pl.'s Answer at 17.) Further, complicating matters even more, plaintiff's counsel refers to individuals by different names within the same document. For example, when discussing Jennifer Nunez in plaintiff's memorandum as to Rohan and Chief Judge, plaintiff's counsel refers to both "Nunez" (Pl.'s Answer at 16) and "Jennifer" (Pl.'s Answer at 18). This court has spent countless hours deciphering plaintiff's counsel's arguments and will now do its best to address them below.

I.    Claims Against Rohan and Chief Judge

Count I of plaintiff's First Amended Complaint is titled "The Title VII Claims." Contrary to appropriate practice, plaintiff alleges more than one claim in Count I. See FED. R. CIV. P. 10(b); Selep v. City of Chicago, 842 F. Supp 1068, 1070 (N.D. Ill. 1993) (noting that multiple claims in a single count is not condoned). Nevertheless, this court interprets Count I to allege three Title VII claims against Chief Judge: individual disparate treatment, harassment, and retaliation. In Count II, plaintiff alleges that Rohan violated 42 U.S.C. § 1981.

A.    Title VII Claims

Title VII prohibits an employer from discriminating against an employee in the terms, conditions, or privileges of employment based on, *inter alia*, the employee's race. 42 U.S.C. § 2000e-2(a). Plaintiff claims Chief Judge discriminated against her on the basis of her race by: suspending and transferring her, harassing her, and retaliating against her. Chief Judge argues that no material facts are in dispute and it is entitled to judgment as a matter of law.

1.    Individual Disparate Treatment

A Title VII plaintiff can meet its burden of proof for establishing race discrimination either through direct evidence of discriminatory intent or through the indirect, burden-shifting McDonnell Douglas method. Von Zuckerstein v. Argonne Nat'l Lab., 984 F.2d 1467, 1472 (7th Cir. 1993). Plaintiff has offered no direct evidence that Chief Judge discriminated against her because of her race, so she must proceed under the McDonnell Douglas burden-shifting test. Under this test, plaintiff carries the burden of establishing the following prima facie case of discrimination: 1) she was a member of a protected class; 2) she was meeting Chief Judge's legitimate expectations; 3) she suffered an adverse employment action; and 4) other, similarly situated employees who were not members of the protected class were treated more favorably. Grayson v. O'Neill, 308 F.3d 808, 817-18 (7th Cir. 2002). If plaintiff can establish a prima facie case of race discrimination, the burden of production shifts to Chief Judge to demonstrate a legitimate, non-discriminatory reason for its employment action. Id. at 818. If Chief Judge advances a legitimate, non-discriminatory reason for its employment action, the burden shifts back to plaintiff to demonstrate that Chief Judge's proffered reason was pretextual. Id. In order to establish pretext, "a plaintiff must demonstrate that an employer's proffered explanation for an employment decision is a dishonest explanation, rather than merely an error." Id. (citing Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir.2000)).

To defeat summary judgment, plaintiff must "present sufficient evidence to show the existence of each element of [her] case on which [she] will bear the burden at trial." Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (quoting Serfecz v. Jewel Food Stores, 67 F.3d 591, 596 (7th Cir.1995)). She must "supply evidence sufficient to allow a jury to render a verdict

15

in [her] favor." Id. With regard to the first element of the prima facie case, Chief Judge concedes that plaintiff is a member of a protected class.

As to the second element of the prima facie case, plaintiff has not demonstrated that she was performing according to Chief Judge's legitimate expectations. As set forth in the statement of facts above, plaintiff's performance declined to a "below standard" level in 2000. The undisputed facts show that during presentations plaintiff often seemed unprepared, reading from the material and providing misinformation. She made numerous errors in processing training requests. She failed to show up for required scheduled activities, including a school career day. She showed poor judgment in monitoring quizzes, deviating from the training schedule and giving the appearance of favoritism. Finally, plaintiff was suspended for three days for her indiscretions surrounding McCurty's evaluation.

Plaintiff argues that she was not properly trained in certain areas of her job description, including collaboration on evaluations, and therefore Chief Judge could not have expected her to meet its legitimate expectations. The undisputed facts show, however, that *all* supervisors were trained on performance evaluations (Pl.'s Reply to Def.'s Stmt. of Mat. Facts ¶ 61), plaintiff had the opportunity to observe a training class (Id. ¶ 20), and Golden provided plaintiff materials for plaintiff's first training class and explained them to plaintiff (Id. ¶ 21).

The only evidence plaintiff has introduced to support her position is a Conference/Seminar Request Form that shows that Nunez and Golden, but not plaintiff, received approval to attend a manager's basic training course in March 1999. (See id. Ex. B.) This form, standing alone, does not create a genuine issue of material fact as to whether plaintiff's training was inadequate. Plaintiff has not submitted any evidence to show why Nunez and not plaintiff may have attended this seminar.

There is no evidence that plaintiff was not given an opportunity to attend this conference, whether she received the training material from an alternative source, or whether Nunez actually attended the conference. Even viewing the evidence in the light most favorable to plaintiff, as this court must, not attending one three-day seminar does not raise a genuine issue of material fact as to whether plaintiff was inadequately trained and thus unable to meet Chief Judge's legitimate expectations.

With regard to the third element of the prima facie case, plaintiff asserts that the transfer and three-day suspension were adverse employment actions.[6] First, "a lateral transfer without a loss in benefits does not constitute an adverse employment action." Stutler v. Illinois Dep't of Corrs., 263 F.3d 698, 702 (7th Cir. 2001). It is undisputed that plaintiff's transfer caused her no loss in title, salary, or benefits. "The fact that [plaintiff] did not like the new position is irrelevant when there is no evidence that the transfer decreased her responsibilities or benefits in any way." Id. at 702-03. Second, plaintiff's three-day suspension with loss of pay, but no loss of benefits or seniority, is probably an adverse employment action. See Russell v. Bd. of Trs. of Univ. of Ill. at Chicago, 243 F.3d 336, 341 (7th Cir. 2001) (holding that a five-day suspension, resulting in a permanent record of disciplinary action, constitutes an adverse job action). In the case at hand, plaintiff was disciplined, i.e., suspended, for a variety of employment-related reasons. Such suspension resulted in three-days' lost pay to plaintiff, making it more than the type of "minor or trivial actions that make

---

[6] Plaintiff also argues in her "Answer," i.e., memorandum, that she was excluded from department meetings, prohibited from performing multiple training requests, and forced to perform clerical duties. Her only "evidence" to support these allegations is her complaint. (Compl. ¶¶ 11, 13.) Because plaintiff has not submitted any further evidence appropriate at summary judgment regarding these allegations, this court cannot consider the allegations in plaintiff's pleadings. See Celotex, 477 U.S. at 324. In fact, the undisputed facts establish that plaintiff was not excluded from department meetings (Pl.'s Reply to Def.'s Stmt. of Mat. Facts ¶ 59) or forced to perform clerical duties (Id. ¶¶ 17, 60, 64, 65).

an employee unhappy." Silk v. City of Chicago, 194 F.3d 788, 800 (7th Cir. 1999). Thus, plaintiff has introduced sufficient evidence to satisfy this third prong of the prima facie case.

As to the fourth element of the prima facie case, plaintiff has not demonstrated that similarly situated non-African-American employees were treated more favorably than her. In order to establish that another employee is "similarly situated," "a plaintiff must demonstrate that there is someone who is directly comparable to him [or her] in all material respects." Grayson, 308 F.3d at 819. "In this inquiry, a 'court must look at all relevant factors, the number of which depends on the context of the case.'" Id. (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir.2000)).

Plaintiff claims that Nunez was similarly situated and treated more favorably than plaintiff. However, the undisputed facts show that Nunez and plaintiff were not similarly situated. Nunez received "meets standard" and "exceeds standard" evaluations, while plaintiff received "meets standard" and "below standard." Further, plaintiff has introduced no evidence to show that Nunez engaged in the same types of misconduct as plaintiff. She has failed to point out any other employee who was unprepared, read from the material, provided misinformation, made numerous errors in processing training requests, failed to show up for required scheduled activities, showed poor judgment in monitoring quizzes, deviated from the training schedule, gave the appearance of favoritism, and improperly evaluated a subordinate; thus, her attempt to locate a similarly situated employee is futile. Although Nunez held the same title as plaintiff, plaintiff has not demonstrated the two were similarly situated. Because plaintiff has presented no evidence that any non-African-American ever conducted himself or herself in the manner which the undisputed evidence shows

18

plaintiff had, plaintiff cannot satisfy her burden of proof that Chief Judge treated similarly situated non-African-American employees more favorably than plaintiff despite his or her conduct.

Plaintiff has the burden of establishing each element of the prima facie case, which this court has found plaintiff has failed to do. However, even assuming plaintiff could establish a prima facie case, summary judgment is still proper. As discussed above, Chief Judge had legitimate, non-discriminatory reasons for suspending plaintiff—she was not meeting her legitimate performance expectations. The evidence is undisputed that, *inter alia*, plaintiff impugned the character of a co-worker, exercised poor judgment in monitoring quizzes and training, and disparaged co-workers. Most significantly, plaintiff evaluated McCurty on the basis of events that never took place and that had nothing to do with the training program.

Once Chief Judge establishes a legitimate, non-discriminatory reason for suspending plaintiff, plaintiff must demonstrate that Chief Judge's proffered reasons are pretextual. In other words, plaintiff must establish "that race more likely motivated the employer." Cowan v. Glenbrook Sec. Servs., Inc., 123 F.3d 438, 445 (7th Cir. 1997). Plaintiff has introduced no evidence to establish pretext; she presented no evidence that non-African-American employees who engaged in similar conduct were or would have been treated differently. She argues that she was not properly trained. However, she has presented no evidence showing that Chief Judge was "more likely than not motivated by a discriminatory reason . . . ." O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002). The record is devoid of any evidence that race played any part in plaintiff's suspension.[7]

---

[7] The only evidence of race playing any part in plaintiff's employment setting are two innocuous comments, which are explored more fully as part of the harassment discussion that starts on the next page of this opinion.

19

Evaluating the evidence in the light most favorable to plaintiff, plaintiff has not advanced evidence of a prima facie case of race discrimination. Even if she had, Chief Judge's reasons for suspending her were legitimate and non-discriminatory, and plaintiff has failed to show these reasons were pretextual. Because there are no material facts in dispute and Chief Judge is entitled to judgment as a matter of law, summary judgment is granted as to plaintiff's disparate treatment claim.

2.    <u>Harassment</u>

Workplace harassment "must be sufficiently severe or pervasive" to be actionable, and to prevail, plaintiff must show that the work environment was both subjectively and objectively hostile. <u>Haugerud v. Amery Sch. Dist.</u>, 259 F.3d 678, 692-93 (7th Cir. 2001). In determining whether an employee's work environment was hostile within the meaning of Title VII, a court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> at 693. The focus is on the totality of the circumstances; thus, no individual factor is dispositive. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993). Title VII "do[es] not mandate admirable behavior from employers," and thus "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" <u>Haugerud</u>, 259 F.3d at 693 (citations omitted).

Plaintiff alleges the following two undisputed incidents constitute a hostile work environment: (1) in August 1999, Anita Wright, an adjunct trainer, commented to Golden that Wright would like to assign an MSW, Master of Social Work, to clean her house; (2) sometime between June and December 2000, Diane Walsh, an attorney, commented to plaintiff that Golden

20

refused to admit that there are cultural differences. Plaintiff asserts, but submits no evidence in support, that she was offended by these comments and believed that Walsh's comments referred to race. It is undisputed that to plaintiff's knowledge no other person made comments about her race.

Clearly, these isolated comments are not actionable under Title VII. No reasonable jury could find such statements to be severe or pervasive. First, regarding the MSW comment, plaintiff argues: "It is reasonable to believe that Plaintiff found this comment offensive. There was only a short time in the history of our nation that African Americans could only work cleaning others [sic] house and cleaning their yard." (Pl.'s Answer to Def.'s Motion for Summary Judgment at 17.) It is unclear to this court how a comment about an MSW has to do with race. But even accepting that it does, such a one-time statement is clearly not pervasive nor severe. Further, race-neutral comments, such as this one, are not actionable under Title VII. See Rodgers v. Western-S. Life Ins. Co., 12 F.3d. 668, 676 (7th Cir. 1993). Despite what plaintiff believed to be the intent of the comment, nothing in the comment itself suggests a racial overtone. Second, this court fails to understand how Walsh's comment addresses race. But again accepting that it does, as this court must in drawing reasonable inferences in plaintiff's favor, statements like Walsh's are not objectively hostile, nor severe or pervasive. Accordingly, summary judgment is granted as to plaintiff's harassment claims.

### 3. Retaliation

Title VII makes it unlawful for Chief Judge to discriminate against plaintiff for exercising her statutory rights. 42 U.S.C. § 2000e-3(a). Plaintiff has introduced no evidence of retaliation, nor has she addressed this issue in her memorandum in opposition to summary judgment, i.e., her "Answer." This may be because plaintiff realized she cannot establish a retaliation claim.

21

First, with regard to the three-day suspension, plaintiff served her suspension December 18, 19, and 20, 2000. It is undisputed that Chief Judge first became aware of plaintiff's EEOC charge on December 21, 2000. Therefore, it was impossible for Chief Judge to suspend plaintiff in retaliation for her EEOC charge if it had no knowledge of the EEOC charge at the time of the suspension. See Albrechtsen v. Bd. of Regents of the Univ. of Wis. Sys., 309 F.3d 433, 436 (7th Cir. 2002). Moreover, the disciplinary proceedings against plaintiff commenced on November 21, 2000, prior to plaintiff filing her complaint with the EEOC on December 6, 2000.

Second, as to the transfer, there is no evidence that plaintiff was forced to transfer. In fact, Young emphasized to plaintiff that his recommendation that she seek a transfer was not a demand. The undisputed facts show that plaintiff herself, with no pressure from Chief Judge, requested the transfer. Additionally, as discussed above, this transfer was not an adverse job action. Thus, plaintiff cannot establish that Chief Judge retaliated against her by transferring her; she, without any direct or indirect coercion, sought the transfer. Because plaintiff cannot establish her retaliation claim, summary judgment is granted on this issue.

B.    Section 1981 Claim

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Courts analyze Title VII and § 1981 cases in the same manner. See Alexander v. Wisconsin Dept. of Health & Family Servs., 263 F.3d 673, 681-82 (7th Cir. 2001). Therefore, the discussion above with regard to Title VII applies with equal force to plaintiff's § 1981 claim.

22

In addition, to prevail under § 1981 in her official capacity suit against Rohan, plaintiff must also demonstrate that "the violation of [her] 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of Monell and subsequent cases." Looper Maint. Serv., Inc. v. City of Indianapolis, 197 F.3d 908, 913 (7th Cir. 1999). A custom or policy can take one of three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law;'" or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority."

Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734-35 (7th Cir. 1994) (citations omitted).

Plaintiff argues that Rohan had an official policy or custom of excluding African-Americans and other minorities from the position of training supervisor for the past thirty-six years. Plaintiff, however, has failed to support her assertion with any evidence whatsoever. Her bare arguments fail to sustain her burden in establishing a custom or policy. Therefore, summary judgment is granted as to plaintiff's retaliation claim.[8]

II.    Claims Against Union

Count VIII, against Union, alleges that it discriminated against plaintiff in violation of Title VII. With regard to Union, no facts are in dispute. The question then becomes whether, viewing the evidence in the light most favorable to plaintiff, Union is entitled to judgment as a matter of law.

---

[8] Rohan, in his memorandum in support of summary judgment, argued that he is not liable in his individual capacity either. It appears from the caption of plaintiff's First Amended Complaint that she is suing Rohan only in his official capacity. However, summary judgment in Rohan's favor on an individual capacity claim is appropriate because plaintiff has not introduced any evidence of intentional discrimination on the basis of race by Rohan, a prerequisite to individual liability under § 1981. See Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996).

To establish a Title VII claim against Union, plaintiff must make the following showing: (1) Chief Judge violated the CBA between Union and Chief Judge; (2) Union breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates animus against African-Americans motivated Union. Greenslade v. Chicago Sun-Times, Inc., 112 F.3d 853, 866 (7th Cir. 1997). Plaintiff must demonstrate each of these three elements by a preponderance of the evidence. Id. at 867.

First, plaintiff argues that Chief Judge violated the CBA by failing to provide Union with a list of witnesses on whom it was relying in support of its decision to suspend plaintiff. The undisputed facts show that at the third step of the grievance procedure, at Union's insistence, Chief Judge provided Union with a list of the witnesses. It is not clear, though, whether these witness names were provided prior to a pre-disciplinary meeting. (See Union's Stmt. of Mat. Facts ¶ 18.) Thus, a question of fact remains as to whether Chief Judge violated the CBA by not providing the witness names prior to plaintiff's pre-disciplinary meeting, as required by the CBA.

Second, in order to show a breach of the duty of fair representation, an Illinois public employee must establish that a union's actions involved "intentional misconduct in representing employees . . . ." 5 ILCS 315/10(b)(1)(ii); see also Murry v. Am. Fed'n of State, County and Mun. Employees, Local 1111, 305 Ill. App. 3d 627, 630, 712 N.E.2d 874, 876 (1st Dist. 1999) ("[A] union cannot be said to have breached its duty of fair representation unless its actions are shown to have been 'intentional, invidious, and directed against an employee . . . .'"). Plaintiff argues that Union breached its duty of fair representation by failing to file a grievance over her 1999 evaluation and refusing to amend her suspension grievance to include race discrimination. With regard to the evaluation, the undisputed facts evince that Union did not file a grievance because it determined,

24

after an investigation, that plaintiff had suffered no adverse impact as a result of the evaluation. Because the CBA provides that an evaluation may be grieved only if there is adverse impact, Union reasonably concluded that there was no contractual basis to file a grievance. As to the suspension grievance, according to the undisputed facts, plaintiff did not explain to Walls in what way or ways plaintiff believed she was discriminated against on the basis of her race. Without such information, Walls could not amend plaintiff's grievance to allege race discrimination.

Union did grieve plaintiff's three-day suspension as being without just cause. Union, however, decided not to submit plaintiff's grievance to arbitration based on other cases similar to plaintiff's, plaintiff's employment history, the credibility of witnesses against plaintiff, plaintiff's statements at the fourth-level grievance hearing, the strength of Chief Judge's evidence, and plaintiff's lack of evidence. The undisputed facts show that Union conducted a detailed and thorough investigation of plaintiff's claim without bias. After such investigation, it determined that plaintiff's grievance lacked merit, and thus refused to submit it to arbitration.

Plaintiff asserts, however, that the real reason Union did not submit her grievance to arbitration was her race. Plaintiff argues that the evidence shows that Union treated two white employees, Crawford and Garvey, better than her. The undisputed facts indicate, however, that Crawford was suspended and required to perform community service for making inappropriate comments about the Reverend Jesse Jackson and that Union did not file a grievance on her behalf. Plaintiff produced no evidence as to whether any grievance was filed on Garvey's behalf. Thus, plaintiff has failed to support her argument that Union submitted the grievances of two white employees, but not her grievance, to arbitration.

25

Viewing the undisputed facts in the light most favorable to plaintiff, no reasonable juror could find that Union intentionally discriminated against her. The evidence is clear that Union thoroughly investigated each and every one of plaintiff's complaints. It determined, based on such detailed and extensive investigation, that plaintiff's requests lacked merit. Plaintiff cannot establish that Union breached its duty of fair representation.

Third, plaintiff has not introduced any evidence making it more likely than not that animus against African-Americans motivated Union's decisions not to grieve her evaluation or amend her suspension grievance. In fact, plaintiff argues that Union failed to represent her "because she supported the opponent of union president Michael Willis." (Pl.'s Answer to Def.'s Motion for Summary Judgment at 18.) Plaintiff makes no argument whatsoever in support of her race discrimination claim. She appears to be arguing in support of Count VII, which was dismissed pursuant to this court's May 7, 2002, order. Because there is no evidence of discriminatory animus on the part of Union based on plaintiff's race, she cannot prevail on the third prong of the Greenslade test.

It is uncontroverted that Union fully investigated plaintiff's grievances and determined that they lacked merit. Plaintiff cannot establish that Union breached its duty of fair representation or harbored discriminatory animus based on plaintiff's race. Accordingly, summary judgment as to Count VIII is granted.

## CONCLUSION

For the above stated reasons, defendants' motions for summary judgment are granted. This case is dismissed in its entirety. Any pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: February 24, 2003

# United States District Court
## Northern District of Illinois
### Eastern Division

PORTER

v.

ROHAN et al

**JUDGMENT IN A CIVIL CASE**

Case Number: 01 C 6992

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that summary judgment is entered in favor of defendants Rohan et al and against plaintiff Porter. This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 2/24/2003

J. Smith, Deputy Clerk